IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**ASHLEY CATTERTON**                                                                                        **PLAINTIFF**

**V.**                                         **NO. 3:21-CV-00071-JTK**

**KILOLO KIJAKAZI,**
**COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**[1]                                **DEFENDANT**

**ORDER**

**I.   Introduction:**

Plaintiff, Ashley Catterton ("Catterton"), applied for disability benefits on July 16, 2019, alleging a disability onset date of January 3, 2019. (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Catterton's application on November 12, 2020. (Tr. at 19). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Catterton has requested judicial review.

For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

**II.   The Commissioner's Decision:**

The ALJ found that Catterton had not engaged in substantial gainful activity since the alleged onset date of January 3, 2019.[3]  (Tr. at 12). The ALJ found, at Step Two, that Catterton

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from

had the following severe impairments: degenerative disk disease of the thoracic spine with radiculopathy, status-post T11-T12 discectomy; degenerative disk disease of the lumbar spine, status-post L4-L5 discectomy; mild asthma; and morbid obesity. (Tr. at 13).

After finding that Catterton's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Catterton had the residual functional capacity ("RFC") to perform work at the sedentary exertional level with exceptions: (1) she should avoid climbing ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; (2) she can frequently reach overhead bilaterally, and occasionally stoop, kneel, crouch, or crawl; (3) she should avoid concentrated exposure to excessive vibration; (4) she should avoid concentrated exposure to extreme temperatures both hot and cold, wetness, and humidity; and (5) she should avoid concentrated exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas. (Tr. at 14).

The ALJ found that Catterton was unable to perform any of her past relevant work. (Tr. at 18). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Catterton's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. at 19). Therefore, the ALJ found that Catterton was not disabled. *Id.*

### III.   Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is

---

performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B. Catterton's Arguments on Appeal

Catterton contends that the evidence supporting the ALJ's decision is less than substantial. She argues that that ALJ should have found carpal tunnel syndrome to be a severe impairment at Step Two and that the RFC did not fully incorporate her limitations. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Catterton did not allege that carpal tunnel was a severe impairment on her application paperwork. (Tr. at 222). An ALJ may consider that factor in his decision to deny benefits. *See*

*Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011). Objective testing only revealed mild carpal tunnel syndrome. (Tr. at 485, 491). Catterton had only a mild decrease in grip strength. (Tr. at 470). She did not require aggressive treatment for carpal tunnel syndrome, with her doctor only prescribing Gabapentin. (Tr. at 41). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Catterton admitted that she did not wear splints for her condition. *Id*.

The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A diagnosis alone does not infer disability; there must be a functional loss establishing the inability to engage in substantial gainful activity. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). And subjective complaints alone do not support a finding that an impairment is severe. 20 C.F.R. §§ 404.1508, 416.908; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The ALJ properly found that carpal tunnel syndrome was non-severe. (Tr. at 13).

Catterton also alleges that the RFC for sedentary work with postural limitations did not fully incorporate her limitations.[4] First, objective MRI results showed mostly mild-to-moderate conditions. (Tr. at 434, 473). Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). After T11-

---

[4] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

T12 microdiscectomy surgery in April 2019, Catterton acknowledged that her pain was better. (Tr. at 357-360). Medication and swimming helped with pain. (Tr. at 459-471, 481-485). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Catterton stopped taking pain medication in July 2019 (Tr. at 354-357), and she did not pursue physical therapy as recommended by her doctors.[5] (Tr. at 481-485). One of Catterton's treating providers filled out a medical source statement that said Catterton was not even capable of performing sedentary work. (Tr. at 17. 497-499). The ALJ properly found this opinion to be unpersuasive; indeed, it did not correlate to the objective findings, conservative treatment, and positive response to treatment. *Id*.

Catterton said she could do things like make school lunches, fold laundry, ride in a car, and shop using a motorized cart. (Tr. at 16, 260-264). She could sweep and mop and help her daughter with homework. *Id*. Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Finally, the ALJ found obesity to be a severe impairment, showing that he considered its effects on Catterton's functional ability. (Tr. at 13).

The benign medical record and conservative treatment, coupled with Catterton's ability to perform daily activities, fully support the RFC assigned by the ALJ.

## IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly found carpal tunnel syndrome to be non-severe and the RFC fully incorporated

---

[5] Catterton asserts that financial considerations made pain management impossible, but did not show that she attempted to avail herself of low-cost or no-cost treatment. (Tr. at 38-40). *See Murphy v. Sullivan*, 953 F.2d 383, 386-7 (8th Cir. 1992).

Catterton's limitations. The finding that Catterton was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 14th  day of March, 2022.

_____
UNITED STATES MAGISTRATE JUDGE